IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-02278-PAB-KAS

THE CRAFTS OUTLET, INC.,

    Plaintiff,

v.

THE CRAFTS ONLINE OUTLET, INC.,

    Defendant.

## ORDER

This matter comes before the Court on Plaintiff's Amended Motion for Default Judgment Against Defendant the Crafts Online Outlet, Inc. [Docket No. 62].

### I. FACTS[1]

The Crafts Outlet, Inc ("Crafts") is a "small business with a long-established online retail store" that has sold craft materials since July 2007. Docket No. 1 at 3, ¶¶ 7-8. Crafts began selling its products through eBay and Amazon. *Id.*, ¶ 8. Crafts created a logo that it uses to promote business, *id.*, ¶ 9, and owns a registered trademark for the logo in Canada. *Id.* at 5, ¶ 12. From June 2013 to August 2023, Crafts spent more than $1 million on marketing and advertising. *Id.*, ¶ 14. Since 2013, Crafts has completed over 750,000 transactions on Amazon.com, resulting in sales worth over $5 million. *Id.*

---

[1] Because of the Clerk of Court's entry of default against defendant, *see* Docket No. 55, the well-pled allegations of plaintiff's complaint, Docket No. 1, are deemed admitted. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

at 6, ¶ 16.  Through Crafts's website, the-crafts-outlet.com, Crafts has earned approximately $225,000 per year from July 2018 to July 2022.  *Id.*, ¶ 17.  The pictures featured on Crafts's website are covered by copyright, and there is a copyright notice on the footer of every page on the website.  *Id.* at 7, ¶ 19.

On or about September 9, 2022, defendant The Crafts Online Outlet, Inc. ("Crafts Online") registered the domain name "TheCraftsOnlineOutlet.com" and launched its own website, thecraftsonlineoutlet.com, where it sold craft materials.  *Id.* at 8, ¶ 23.  Crafts Online copied approximately 800 pages from Crafts's website, including Crafts's copyrighted photographs and product descriptions.  *Id.*, ¶ 24.  When Crafts Online copied Crafts's photographs, it removed Crafts's copyright notice and altered it so that it appeared Crafts Online owned the photographs.  *Id.* at 11, ¶ 34.  Crafts did not authorize Crafts Online to "use, copy, reproduce, or distribute" the content on Crafts's website.  *Id.* at 8, ¶ 25.

Crafts Online offers products for sale that are copied from Crafts's website and markets its business through Google advertisements, which is one of the channels Crafts uses for advertisements.  *Id.* at 9-10, ¶¶ 27-28.  Although Crafts Online appears to offer craft materials for sale, Crafts Online's website will not "fully transact a sale."  *Id.* at 10, ¶ 29.  Crafts Online will allow a customer to put items in the online "shopping cart" and go "through the steps of transacting an online sale," but the transaction "stops and appears to fail" after the website has accepted the customer's credit card information.  *Id.*  Crafts Online diverts customers – who are looking for Crafts's website – to Crafts Online's website instead and "scrape[s] financial information, namely active credit cards," from the customers.  *Id.*, ¶ 30.

In July 2022, Crafts noticed a "dramatic drop" in its website traffic. *Id.* at 7, ¶ 20. Upon investigating the decrease in website traffic, Crafts found that Crafts Online had "cloned" Crafts's website. *Id.* As of July 2023, Crafts's sales on its website dropped from approximately $225,000 to $167,000 per year. *Id.* at 6, 7, ¶¶ 17, 20.

On October 4, 2023, plaintiff's counsel purportedly served Crafts Online's registered agent, Lovette Dobson of Republic Registered Agent, LLC, by mailing service to 17350 State Hwy 249, Suite 200, Houston, Texas 77064. Docket No. 34 at 1. She attached proof-of-delivery showing that service was delivered and signed for by "J. Morris." Docket No. 34-1. On October 11, 2024, the Clerk of Court entered default against defendant The Crafts Online Outlet, Inc. ("Crafts Online"). Docket No. 55. On December 26, 2024, Crafts filed the instant motion for default judgment. Docket No. 62. Crafts Online has not entered an appearance in this case.

## II. LEGAL STANDARD

In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55. First, the party must seek an entry of default from the Clerk of the Court under Rule 55(a). Second, after default has been entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b). *See Williams v. Smithson*, 57 F.3d 1081, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott*, 327 F.3d at 1124 (citation omitted). In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits." *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted). "The

3

default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* It serves to protect a plaintiff against "interminable delay and continued uncertainty as to his rights." *Id.* at 733. When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard."). One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted. *See* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2688.1 (4th ed., 2022 rev.). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Id*. A court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.,* 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere

4

possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

To obtain a default judgment for a sum certain, the plaintiff must show the following by affidavit.  First, that the party in default is (1) not a minor or an incompetent person, (2) is not in military service, and (3) has not made an appearance. D.C.COLO.LCivR 55.1(a)(1).  Second, that the sum is certain or the sum can be made certain by computation.  D.C.COLO.LCivR 55.1(a)(2).  Additionally, the plaintiff must submit a proposed form of judgment that shows (1) the party in favor of whom judgment shall be entered, (2) the party against whom judgment shall be entered, (3) the sum certain amount consisting of the principal amount, prejudgment interest, and the rate of post judgment interest, and (4) the sum certain of attorney fees.  D.C.COLO.LCivR 55.1(b).

## III.   ANALYSIS

Before entering default judgment, the Court must determine whether it has subject matter jurisdiction over the case and personal jurisdiction over the defendant. *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (holding that "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case").

### A. Subject Matter Jurisdiction

Crafts states that the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331. Docket No. 1 at 2, ¶ 5. Pursuant to 28 U.S.C. § 1331, the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." "A claim is part of the same case or controversy if it derives from a common nucleus of operative fact." *Price v. Wolford*, 608 F.3d 698, 702-03 (10th Cir. 2010) (quotation and alteration marks omitted). "[T]he Supreme Court repeatedly has determined that supplemental jurisdiction is not a matter of the litigants' right, but of judicial discretion," and "district courts may decline to exercise supplemental jurisdiction." *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir. 2004).

Crafts brings six claims: (1) trademark infringement of its mark under 15 U.S.C. § 1114; (2) false designation of origin under 15 U.S.C. § 1125(a); (3) counterfeiting and trademark infringement under 15 U.S.C. § 1114(1); (4) removal and alteration of copyright management information under 17 U.S.C. § 1202; (5) cybersquatting under 15 U.S.C. § 1125(d); and (6) deceptive trade practices under Colo. Rev. Stat. § 6-1-105. Docket No. 1 at 12-18.

The Court has subject matter jurisdiction over Counts One through Five because they arise under federal law and relate to copyrights and trademarks. *See* 29 U.S.C.

§ 1338. Furthermore, the Court finds that it has supplemental jurisdiction over Count Six that is brought pursuant to Colorado's Consumer Protection Act. The Colorado Consumer Protection Act claim arises from the same common nucleus of operative fact as the federal claims because all the claims involve Crafts Online's operation of "TheCraftsOnlineOutlet.com," which utilizes assets of Crafts's website, including trademarked and copyrighted material. *See* Docket No. 1 at 12-18. Because the Colorado Consumer Protection Act claim shares a "common nucleus of operative fact" with the federal claims, *see Price*, 608 F.3d at 702-03, the Court will exercise supplemental jurisdiction over the claim in its discretion. Accordingly, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367(a).

### B. Personal Jurisdiction

Plaintiff bears the burden of establishing personal jurisdiction. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). Plaintiff can satisfy its burden by making a prima facie showing. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The Court will accept the well-pled allegations of the complaint as true in determining whether plaintiff has made a prima facie showing that personal jurisdiction exists. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further. *Id.* The plaintiff, however, may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Id.*

Furthermore, proper service is a jurisdictional prerequisite to litigation. *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) ("Effectuation of service is a

7

precondition to suit."). Without proper service, the Court lacks personal jurisdiction over a defendant. *Okla. Radio Assocs. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 943 (10th Cir. 1992).

Crafts Online is a Colorado corporation. Docket No. 1 at 2, ¶ 2. Rule 4(h)(1)(B) provides that a plaintiff may serve process on a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B); *Howarth v. TCER, LLC*, 20-cv-03230-PAB-KMT, 2021 WL 4775270, at *3 (D. Colo. Oct. 13, 2021). In the alternative, a plaintiff may serve a corporation "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1) allows service to be made "following state law" for either the state where the district court is located or where service is made. Fed. Civ. P. 4(e)(1). "The purpose of Rule 4(h) is to ensure that when a litigant serves process on a corporation, the process is delivered to a person of sufficient rank and control in the corporation such that the court can be reasonably assured that those corporate officials responsible for responding to the suit will actually be apprised of its pendency." *Howarth*, 2021 WL 4775270, at *3 (quoting *Inversora Murten SA v. Energoprojekt Holding Co.*, No. 06-cv-02312-MSK, 2009 WL 179463, at *4 (D. Colo. Jan. 22, 2009)).

Under Colorado law, a plaintiff can effectuate service on a corporation by delivering service of process to:

> the registered agent for service as set forth in the most recently filed document in the records of the secretary of state of [Colorado] or of any other jurisdiction, or that agent's secretary or assistant, or one of the following:
>
> > (A) An officer of any form of entity having officers, or that officer's secretary or assistant;

8

>
> (B) A general partner of any form of partnership, or that general partner's secretary or assistant;
>
> (C) A manager of a limited liability company or limited partnership association in which management is vested in managers rather than members, or that manager's secretary or assistant;
>
> (D) A member of a limited liability company or limited partnership association in which management is vested in the members or in which management is vested in managers and there are no managers, or that member's secretary or assistant;
>
> (E) A trustee of a trust, or that trustee's secretary or assistant;
>
> (F) The functional equivalent of any person described in paragraphs (A) through (E) of this subsection (4), regardless of such person's title. . .
>
> (G) If no person listed in subsection (4) of this rule can be found in this state, upon any person serving as a shareholder, member, partner, or other person having an ownership or similar interest in, or any director, agent, or principal employee of such entity, who can be found in this state, or service as otherwise provided by law.

Colo. R. Civ. P. 4(e)(4). Under Colorado law, service can also be effectuated on an entity by mail under Colo. Rev. Stat. § 7-90-704(2), which states in relevant part:

> if the registered agent is not located under its registered agent name at its registered agent address, or if the registered agent cannot with reasonable diligence be served, the entity may be served by registered mail or by certified mail, return receipt requested, addressed to the entity at its principal address.

Colo. Rev. Stat. § 7-90-704(2). Service under Colo. Rev. Stat. § 7-90-704(2) is perfected at the earliest of: (a) the date the entity receives the process, notice, or demand; (b) the date shown on the return receipt, if signed on behalf of the entity; or (c) five days after mailing. *Id*., § 7-90-704(2)(a)-(c).

Here, service was sent by mail. Docket No. 34 at 1. However, service by mail is proper under Colo. R. Civ. P. 4 "only in actions affecting specific property or status or other proceedings in rem." Colo. R. Civ. P. 4 (g). This is not a proceeding in rem.

9

Therefore, Crafts did not properly serve Crafts Online in accordance with Fed. R. Civ. P. 4 and Colo. R. Civ. P. 4. [2]

While Colo. Rev. Stat. § 7-90-704(2) states that service can be effectuated on an entity by mail, Crafts provides no evidence that "the registered agent is not located under its registered agent name at its registered agent address" or that "the registered agent cannot with reasonable diligence be served." Colo. Rev. Stat. § 7-90-704(2). There is no indication that Crafts attempted to serve Crafts Online by any means other than by mail. Therefore, Crafts has not perfected service against Crafts Online.[3] *See Collins v. Binduo Elec. Bus. Inc.,* No. 23-cv-00133-PAB-SBP, 2024 WL 1281509, at *2 (D. Colo. Mar. 26, 2024) (finding that service via certified mail did not constitute proper service under Colo. Rev. Stat. § 7-90-704(2) because plaintiff "failed to show that the registered agent could not be located at the listed address or be served with reasonable diligence" and "provide[d] no evidence that she attempted to serve [defendant's] registered agent by any means other than certified mail").

Because service on Crafts Online is "insufficient but curable," the Court will deny Crafts's motion without prejudice and Crafts will be allowed an opportunity to properly serve Crafts Online with process. *See AMG Nat'l Corp. v. Wright*, No. 20-cv-02857-PAB-KLM, 2021 WL 4170459, at *4 (D. Colo. Sept. 14, 2021) (denying motion for

---

[2] Crafts did not file a motion for substitute service asking that it be permitted to serve Crafts Online by mail. *See* Colo. R. Civ. P. 4(f).

[3] Even if service by mail was proper, Crafts provides no evidence that shows "J. Morris," the person who signed for the package containing service, is authorized to accept mail on behalf of Crafts Online's registered agent pursuant to Colo. R. Civ. P. 4(e)(4). Service must be made upon an "employee whose position presumptively includes delivery of papers to the relevant party." *Goodman Assocs., LLC v. WP Mountain Properties, LLC,* 222 P.3d 310, 317 (Colo. 2010).

10

default judgment based on improper service and providing time for plaintiff to attempt proper service).

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Plaintiff's Amended Motion for Default Judgment Against Defendant the Crafts Online Outlet, Inc. [Docket No. 62] is **DENIED without prejudice**.

DATED August 1, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge